UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE MARTIN,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:15-cv-1480 AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be granted and defendant's cross-motion for summary judgment will be denied.  The matter will be remanded to the Commissioner for further proceedings.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB and for SSI on August 5, 2011. Administrative Record ("AR") 202-207 (Exh. 1D), 208-214 (Exh. 2D).[2] The disability onset date for both applications was alleged to be December 31, 2002. AR 202, 208. The applications were disapproved initially, AR 145-148 (Exh. 1B), 149-152 (Exh. 2B), and on reconsideration, AR 156-160 (Exh. 4B), AR 161-165 (Exh. 5B). Administrative Law Judge ("ALJ") Robert C. Tronvig, Jr. presided over a hearing on June 23, 2013, attended by plaintiff's attorney and Vocational Expert ("VE") Jim Van Eck, who testified. AR 78-86. Plaintiff was present and testified at the hearing as well. AR 53-74, 77, 81.

On October 9, 2013, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 11-26 (decision), 27-31 (exhibit list). On May 12, 2015, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision).

Plaintiff filed this action on July 10, 2015. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 26 (plaintiff), 6 (defendant). The cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 18, 25.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1964, and accordingly was 38 years old on the alleged disability onset date, making her a "younger person" under the regulations. AR 25; see 20 C.F.R §§ 404.1563(c) (age as a vocational factor), 416.963(c) (same). Plaintiff has at least a high school education, and can communicate in English. Id.

## III. LEGAL STANDARDS

"[A] federal court's review of Social Security determinations is quite limited." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision that a

---

[2] The AR is electronically filed at ECF Nos. 11-3 to 11-13 (AR 1 to AR 716).

2

1  claimant is not disabled will be upheld "unless it contains legal error or is not supported by
2  substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "'The findings of
3  the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"
4  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

5  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it
6  is such relevant evidence as a reasonable person might accept as adequate to support a
7  conclusion." Garrison, 759 F.3d at 1009. "While inferences from the record can constitute
8  substantial evidence, only those reasonably drawn from the record will suffice." Widmark v.
9  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

10  The court reviews the record as a whole, "weighing both the evidence that supports and
11  the evidence that detracts from the Commissioner's conclusion." Rounds v. Commissioner Social
12  Security Admin., 807 F.3d 996, 1002 (9th Cir. 2015); Attmore v. Colvin, 827 F.3d 872, 875 (9th
13  Cir. 2016) ("[w]e cannot affirm … "simply by isolating a specific quantum of supporting
14  evidence").

15  It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony,
16  and resolve ambiguities in the record." Brown-Hunter, 806 F.3d at 492 (internal quotation marks
17  omitted). "Where the evidence is susceptible to more than one rational interpretation, one of
18  which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,
19  278 F.3d 947, 954 (9th Cir. 2002). Thus, in reviewing the Commissioner's decision, this court
20  does not substitute its discretion for that of the Commissioner. See Brown-Hunter, 806 F.3d at
21  492 ("[f]or highly fact-intensive individualized determinations like a claimant's entitlement to
22  disability benefits, Congress places a premium upon agency expertise, and, for the sake of
23  uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their
24  discretion for that of the agency") (internal quotation marks omitted).

25  The court may review "only the reasons provided by the ALJ in the disability
26  determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison,
27  759 F.3d at 1010. Finally, the court will not reverse the Commissioner's decision if it is based on
28  "harmless error," meaning that the error "is inconsequential to the ultimate nondisability

determination ….." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A). Plaintiff is "disabled" if she is unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ….'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting 42 U.S.C. §§ 423(d)(1)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

4

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The plaintiff bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since December 31, 2002, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments; multiple level cervical degenerative disc disease ("DDD"), cervical narrowing most prominent at C3-4 and C5-6, chronic back pain, bipolar I disorder, and recurrent major depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except no climbing ladders/ropes/scaffolds and mentally limited to simple tasks (unskilled work) with limited peer and public interaction.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. [Step 5] The claimant was born on … 1964 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 13-26.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382(a)(3)(A). AR 26.

## VI. ANALYSIS

Plaintiff alleges the ALJ committed the following legal errors: (1) he failed to properly weigh and credit treating opinion evidence, and rejected examining and non-examining medical opinion evidence he purported to accord "significant weight" without articulating legitimate reasons for so doing; and (2) he failed to credit plaintiff's testimony and statements regarding the impact of her impairments and symptoms on her ability to function without articulating clear and convincing reasons for so doing. Plaintiff requests that the matter be remanded to the Commissioner for payment of benefits, or in the alternative, for further proceedings with the appropriate corrective instructions. (ECF No. 18 at 1.)

### A. The ALJ's Evaluation of Medical Opinion Evidence

#### 1. Principals Governing Consideration of Medical Opinion Evidence

In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more

weight should be given to a treating physician's opinion than to those who do not treat the claimant, and more weight should be given to an examining physician's opinion that to those who do not examine the claimant.  Id. at 830, 832-33.

The opinion of a claimant's treating physician is presumptively entitled to special weight:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  Even where the treating doctor's opinion is not given controlling weight,

> Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527....In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Orn, 495 F.3d at 632 (quoting SSR 96-2p).  In addition, if the ALJ is not giving the treating doctor's opinion "controlling" weight:

> the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, available at 61 Fed. Reg. 34,490, 34,492 (July 2, 1996).[3]

Even where the treating doctor's opinion is contradicted by another doctor's opinion, the ALJ "may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Those

---

[3] Reproduced at https://federalregister.gov/a/96-16685 (last visited by the court on March 27, 2016).

reasons must include a weighing of "all of the factors provided" in 20 C.F.R. §§ 404.1527(c) and 416.927(c), namely, length, nature and extent of the treatment relationship; supportability; consistency; and specialization.  See Orn, 495 F.3d at 632.

### 2. Physical Opinion Evidence

#### a. Treating Physician, Diane Accinelli, M.D.

Plaintiff sustained a back injury at work on April 3, 2012.  ECF No. 18 at 2.  Dr. Accinelli treated plaintiff for this injury from April 2012 to October 2012.  AR 24.  Her treatment records are in the administrative record at AR 557-560 (May 15, 2012) (Exh. 14F), 561-563 (May 8, 2012) (Exh. 14F), 564-567 (May 3, 2012) (Exh. 14F), 568-570 (April 24, 2012) (Exh. 14F), 590-592 (April 16, 2012) (Exh. 14F), 599-602 (April 10, 2012) (Exh. 14F).  The ALJ gave the opinions "minimal weight."

Dr. Accinelli diagnosed plaintiff with "cervical disc degeneration," "torticollis," and "sprain cervical."  AR 558.  Dr. Accinelli's diagnosis was based on an MRI ("Magnetic Resonance Imaging") of the cervical spine that was performed on May 9, 2012.  AR 540-542.  The MRI documented "multilevel degenerative disc disease" and "varying degrees of foraminal narrowing noted, most prominently at the C3-4 and C5-6 levels."  AR 541.

Accordingly, Dr. Accinelli documented the following: plaintiff had "an abnormal posture- sit very stiff.  The patient has loss of cervical lordosis.  There is neck stiffness or splitting.  Posterior cervical tenderness is noted.  There is neck muscle tenderness: paracervical, sternocleidomastoid and trapezius.  Spasms of the neck muscles are noted: paracervical and trapezius."  AR 558.  Dr. Accinelli also listed plaintiff's symptoms as sharp neck pain, "numbness and tingling of the arm - the arm falls asleep," and neck pain with motion.  AR 557.

Dr. Accinelli prescribed Tramadol HCL Acetaminophen,[4] Norco,[5] Naproxen,[6] and

---

[4] Tramadol is an opioid used for moderate to moderately severe pain and is used for chronic ongoing pain. *See* http://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited by the court on March 13, 2017).  In combination with acetaminophen it is used to provide better pain relief. *See* http://www.mayoclinic.org/drugs-supplements/tramadol-and-acetaminophen-oral-route/description/drg-20062870 (last visited by the court on March 13, 2017).

[5] Norco is a hydrocodone and acetaminophen combination used to relieve moderate to (continued…)

Cyclobenzaprine[7] to be continued until the following visit. AR 559. Based on the diagnosis, Dr. Accinelli assessed the following work restrictions for the plaintiff's physical limitations on May 15, 2012:[8]

> No overhead work. No stooping and bending. No kneeling or squatting.
> No Lift, No Push and No Pull.
> Must take a stretch break for 10 minutes after every 60 minutes from key board and repetitive motion to stretch and rest.
> The patient has been advised not to drive or operate heavy equipment.
> Other restrictions: Please allow her to work at job where she can have straight vision not looking down or up.

AR 559.[9]

Additionally, Dr. Accinelli provided additional treatment in the form of Chiropractic Therapy and Acupuncture Therapy. AR 559. The reasons for additional treatment included: "decreased/impaired functional mobility/capacity, decreased joint range of motion, functional strength deficits, positive special tests/ radicular symptoms/ hypermobility, postural dysfunction and/or impaired movement patterns, provocation of pain with functional mobility ROM." AR 559. Dr. Accinelli further opined "because of radicular [symptoms] will ask Dr. Lin for EMG/NCS and see if she is a candidate for epidural." AR 559.

      b.  Examining Physician, Laura Grigor, M.D.

Dr. Grigor conducted a comprehensive internal medicine evaluation of plaintiff on August

---

moderately severe pain. *See* http://www.mayoclinic.org/drugs-supplements/hydrocodone-and-acetaminophen-oral-route/description/drg-20074089 (last visited by the court on March 13, 2017).

[6] Naproxen is an anti-inflammatory drug used to relieve inflammation, swelling, stiffness, and joint pain. *See* http://www.mayoclinic.org/drugs-supplements/naproxen-oral-route/description/drg-20069820 (last visited by the court on March 13, 2017).

[7] Cyclobenzaprine helps relax muscles, relieve pain, stiffness, and discomfort caused by strains, sprains, or injuries to muscles. *See* http://www.mayoclinic.org/drugs-supplements/cyclobenzaprine-oral-route/description/drg-20063236 (last visited by the court on March 13, 2017).

[8] A Work Status Report dated June 13, 2012 provides the most recent work restrictions.

[9] Dr. Accinelli provides the same work restrictions in all of her treatment reports, through June 13, 2012. AR 668, 563, 566, 568, 590.

27, 2011.  AR 488.  There were no medical records available for review.  All information that she considered came from her subjective observations of the claimant and the claimant, who "was unable to give an adequate and accurate history […] jumping from one subject to another, making obtaining a history very difficult."  AR 488.  The report does not indicate how much time Dr. Grigor spent with plaintiff.

On examination, Dr. Grigor noted plaintiff had lumbar paravertebral muscle spasms.  AR 490-491.  Despite these findings, Dr. Grigor's diagnosis included only: congenital heart disease, chronic back pain, and history of asthma.  AR 491.  In her functional assessment of plaintiff, Dr. Grigor highlighted that it was:

> Difficult to assess in the setting of inadequate history, although based on physical exam, claimant does not appear to have any limitations. If I were to evaluate based on physical exam only, claimant's standing and walking capacity would be up to six hours.
> Maximum sitting capacity: Up to six hours.
> Assistive device: None used or needed.
> Maximum lifting/carrying capacity: 50 pounds occasionally, 25 pounds frequently.
> Postural activity limitations: Frequent climbing, balancing, stopping, kneeling, crouching, and crawling.
> Manipulative activity limitations: No limitations to reaching, handling, fingering, and feeling.
> Workplace environmental activity limitations: Limitations regarding working around chemicals, dust, fumes, gases in the setting of prior history of asthma.

AR 491-492.

Dr. Grigor further opined that "for a better evaluation, more medical records for review would be of benefit."  AR 492.

### c. Non-Examining Physician, S. Clancey, M.D.

Dr. Clancey conducted the physical health portion of the agency case review following Dr. Grigor's consultative examination.  AR 109.  He considered Dr. Grigor's findings and concluded plaintiff's physical impairments were "non-severe from a phys/ med/functional standpoint."  Id.

////

### 3. Mental Opinion Evidence

#### a. Treating Psychiatrist, Gloria Bentinck, M.D.

Dr. Bentinck treated plaintiff from August to December 2006. AR 700-716. On August 2, 2006, Dr. Bentinck took a history and performed a mental status examination. Among other things, Dr. Bentinck noted:

> Stressors of pressured, somewhat disorganized talk about her desperate financial situation, hopelessness, suicidal ideation ("SI"), anger at family members who are unsympathetic, very depressed & tearful.

> Describes herself as always pressured & multi-tasking, describes mood swings.

AR 715.

Dr. Bentinck assessed the following: on Axis I; 296.33 Major Depressive, Recurrent; on Axis II; No diagnosis; on Axis III; Congenital heart pathology; on Axis IV; Severe, F & A; on Axis V; Current 35 Past 60. AR 715. Dr. Bentinck opined plaintiff's target symptoms were "depression, SI, agitation & disorganized thinking." AR 715. Plaintiff was prescribed Prozac, Buspar, Klonopin, and Restoril. AR 715.

#### b. Examining Psychologist, Jeremy Trimble, Psy.D.

On September 28, 2011, Dr. Trimble conducted a complete psychiatric evaluation of plaintiff at the request of the Department of Social Services. AR 495-501. There were no psychiatric records available for review and all information considered came from the plaintiff, who he considered to be a poor historian. AR 495. The report does not indicate how much time Dr. Trimble spent with plaintiff.

Dr. Trimble's diagnostic impressions were as follows: on Axis I; Bipolar I disorder, most recent episode depressed, on Axis II; no diagnosis, on Axis III; deferred to appropriate specialist, on Axis IV; psychosocial stressors over the past year (mild); and a GAF score of 75 on Axis V. AR 499. The prognosis was "fair." AR 500.

Dr. Trimble rated the plaintiff's work-related abilities as moderately impaired in two (2)

////

categories;[10] mildly impaired in three (3) categories;[11] and unimpaired in three (3) categories;[12] and found her able to handle funds. AR 500.

### c. Non-Examining, Peter Bradley, Ph.D.

Dr. Bradley conducted the mental health portion of the agency case review following Dr. Trimble's consultative examination. AR 107-117. For plaintiff's RFC he rated the plaintiff's work-related abilities as moderately limited in four (4) categories;[13] and not significantly limited in four (4) categories.[14] AR 111-112. He diagnosed plaintiff with a bipolar disorder and gave a GAF score of 75. AR 110. He also opined that plaintiff is "limited to simple and moderately detailed tasks on a sustained basis, with limited peer interaction." AR 112.

### 4. The ALJ's Findings

#### a. Physical limitations

The ALJ gave "minimal weight" to Dr. Accinelli's opinion regarding plaintiff's physical limitations because: (1) plaintiff was only treated from April 2012 to October 23, 2012; (2) the records did not indicate surgical intervention was required, and diagnostic studies did not "identify any moderate, marked or severe abnormalities, including a herniation or disc protrusion;" (3) plaintiff "underwent limited physical therapy and chiropractor care, and no pain

---

[10] These categories are (1) ability to complete a normal workday or work week without interruptions resulting from psychiatric conditions; and (2) ability to deal with the usual stresses encountered in competitive work.

[11] These categories are (1) ability to perform work activities on a consistent basis; (2) ability to perform work activities without additional or special supervision; and (3) ability to interact with employers, coworkers and the public.

[12] These categories are (1) ability to accept instructions from supervisors; (2) ability to perform detailed and complex tasks as well as simple and repetitive tasks; and (3) ability to maintain regular attendance, persistence, and pace.

[13] These categories are (1) ability to carry out detailed instructions; (2) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) ability to work in coordination with or in proximity to others without being distracted by them; and (4) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

[14] These categories are (1) ability to carry out very short and simple instructions; (2) ability to maintain attention and concentration for extended periods; (3) ability to sustain an ordinary routine without special supervision; and (4) ability to make simple work-related decisions.

injection, especially epidural steroid, were administered;" (4) the medical opinions were inconsistent with "those of Dr. Grigor in his internal medical CE, and the SA determinations;" (5) the Title XVI indicated "she did not need help with personal care, hygiene or upkeep of a home" (citing Exh. 1D); (6) "she is able to perform multiple normal daily activities that indicate she is quite functional" (citing Exhs. 4E-5E, 8E-10E, 5F & testimony); and (7) "no physical difficulties were observed when she filed her applications" (citing Exh. 2E). AR 24.

The ALJ based his RFC determination on the assessment by Dr. Grigor which he gave "significant weight" as his opinions were "well supported" by the "physical examination findings and results of diagnostic testing of the spine that failed to demonstrate any moderate, marked or severe abnormalities of the spine." AR 23.

### b. Mental limitations

The ALJ gave "significant weight" to Dr. Bradley and Dr. Trimble's mental and psychiatric opinions. AR 23. The ALJ noted the opinions were supported because: (1) "since her alleged onset date there was no documentation of a psychiatric hospitalization, 5150 mental health admission, help from United Way organizations, or crisis center contact(s);" (2) "treating records did not indicate that she needed to be hospitalized" and other for in 2006 there is "limited evidence of individual therapy and no evidence of group therapy;" (3) treating records indicated multiple normal psychiatric examinations; (4) based upon her testimony plaintiff "performs a wide array of daily activities that establish she is more functional than alleged" and is further supported by the SA and CE mental opinions; and (5) plaintiff testified she gets along with her neighbors and her auditory hallucinations were rare when on medication. AR 23.

### 5. Discussion

#### a. Physical Impairments

The ALJ's first reason for rejecting Dr. Accinelli's opinion and giving it "minimum weight" – that plaintiff was only treated from April 2012 to October 23, 2012 – is inadequate.[15]

---

[15] In the findings, the ALJ identifies Dr. Accinelli under US Health Work Medical. AR 24. Dr. Haggerty, who also treated plaintiff three times, is associated with the same medical group. The ALJ did not distinguish the two doctors in his findings when he accorded them "minimal weight." (continued…)

Because Dr. Accinelli was plaintiff's treating physician,[16] the ALJ was required to provide "clear and convincing reasons," or at a minimum "specific and legitimate reasons" for rejecting her opinion. The ALJ provided neither. An ALJ may only discount the opinion of a treating physician, even when that opinion is contradicted by another medical source, by articulating "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ satisfies the requirement for "substantial evidence" by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1996)). The ALJ failed to do so here. Moreover, his opinion fails to expressly weigh "all of the factors provided" in 20 C.F.R. §§ 404.1527(c) and 416.927(c), namely, length, nature and extent of the treatment relationship; supportability; consistency; and specialization. See Orn, 495 F.3d at 632. For these reasons alone, the ALJ's decision cannot stand.

The ALJ's other stated reasons are equally insufficient as a basis for discounting the opinion of a treating physician:

First, contrary to the ALJ's assertion that the clinical records "did not identify any moderate, marked or severe abnormalities, including a herniation or disc protrusion," the May 9, 2012 MRI of the plaintiff's cervical spine documented multilevel degenerative disc disease and varying degrees of foraminal narrowing. AR 541. The MRI noted "mild to *moderate* narrowing of the right neural foramen" in the C4-5 level and "*moderate* narrowing of the right neural foramen" at the C3-4 level. AR 541.

Second, plaintiff was given physical therapy, chiropractic therapy, and acupuncture to treat for her pain ranging from two to three times a week. (Exhs. 12 F, 14F, 19F, 22F, 23F). She

---

AR 24. Dr. Haggerty's records are under: Work Status Report AR 681 (May 31, 2012) (Exh. 22F), and Treatment Reports at AR 553-556 (May 24 2012) (Exh. 14F), 613-616 (April 5, 2012) (Exh. 14F). Dr. Haggerty's treatment and diagnosis are similar to Dr. Accinelli's: She diagnosed plaintiff with degenerative disc disease, muscle spasm of neck, and sprain cervical on May 24, 2012. AR 554. She assessed the same work restrictions as did Dr. Accinelli. AR 681. The follow-up appointment was made with Dr. Accinelli. Id.

[16] Both parties agree Dr. Accinelli is plaintiff's treating physician. ECF No. 18 at 12, 25 at 9.

14

was also on significant medication that helped alleviate her symptoms of pain.[17] See fn. 5-8. The ALJ's reference to "limited" physical therapy, AR 24, is inconsistent with the hearing testimony as to why physical therapy had been stopped:

> Q: …When was your last time in physical therapy?
> A: Last month.
> Q. Okay. So you're ongoing in physical therapy.
> A: No, they cancelled me.
> Q: Why?
> A: Due to my back injury, it's too sensitive for physical therapy at this time—too flared up was what they stated—to try at home and then come back in about four weeks and see how we do, because I was at the lowest level and I couldn't—I could do it while I was there but when I got home the next day I could not move, I was immobile…
> Q: We were talking about physical therapy stopped last month because you were hypersensitive and they cancelled the appointment, is that right?
> A: No, I went to the appointment and then they suggested that I discontinue it for a while and do at home physical therapy, do heat prior to one exercise a day and then ice directly after that.

AR 63-63.

Third, the ALJ discounted plaintiff's complaints of pain as not credible because "the SA determinations indicated she did not have a severe physical impairment" and Dr. Grigor's opinions indicated she was capable of medium work. AR 21. The ALJ also relies on opinions from 2011, the year prior to the date plaintiff suffered her physical injury at work. Moreover, Dr. Grigor and the SA's opinions were conducted without any medical records.[18] See Herron v. Astrue, 407 Fed. Appx. 139, 141 (9th Cir. 2010) (It was error to give "great weight" to a non-treating state agency consultant's opinion who did not review a "substantial portion of the

---

[17] Plaintiff does note that an epidural treatment was requested by Dr. Accinelli but that she does not know why it was never scheduled. ECF No. 18 at 13.

[18] The 8th Circuit has also held that the ALJ improperly relied on a consulting physician who formed his conclusions in the absence of medical records. The consulting physician stated, "'No medical information was available for my review,' and conclude[d][…]saying, 'I have insufficient information upon which to base a specific diagnosis.'" Gavin v. Heckler, 811 F.2d 1195, 1200 (8th Cir. 1987). In reversing the denial of benefits, the court focused on the consulting physician, holding that his admission that he lacked background information "seriously undermine[d]" the conclusions. Id.

relevant medical evidence…"). Plaintiff's assertions are consistent with the treating doctor's findings.

Fourth, the mere fact that a plaintiff has "carried out certain daily activities…does not in any way detract from her credibility as to her overall disability." Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The plaintiff's work restrictions limited her from lifting, pushing, pulling, stooping and bending and required she take a 10 minute break every hour. At the hearing, plaintiff testified she is able to do various housework tasks but with difficulty and only when her back allows. AR 71. Plaintiff also testified that at times she cannot dress herself and resorts to wearing button downs due to difficulty with pullovers. AR 72. Plaintiff also testified she enjoys making greeting cards as one of her hobbies but it takes her a week to complete one card due to her neck. AR 72. Further, the VE testified that with the work restrictions a 10 minute break every hour would be less than full-time and would be "preclusive" to do past relevant work. AR 85. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Orn, 495 F.3d at 639. The undersigned does not find that plaintiff's daily activities are transferrable to the workplace.

Finally, the ALJ's personal observations of the plaintiff do not constitute a substantial reason for rejecting the opinions of a treating physician. See Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 602 (9th Cir. 1984) (per curiam).

For all these reasons, the ALJ erred in his consideration of Dr. Accinelli's opinions. Moreover, his adoption of the SA and Dr. Grigor's conclusions is unsupported by substantial evidence.

b. Mental Impairments

The ALJ's reasons for according "significant weight" to Dr. Bradley and Dr. Trimble's opinions are inconsistent with the record. The ALJ noted there was no documentation of "psychiatric hospitalization, 5150 mental health admissions, help from United Way organizations or crisis center contacts" to support plaintiff's allegations. However, the record includes evidence

1    of treatment through Imperial County Mental Health for a suicide attempt.  AR 648, 314-315,
2    331-332.  The ALJ has a "special duty to fully and fairly develop the record and to assure
3    that…claimant's interests are considered."  Booz v. Sec'y of Health & Human Servs., 734 F.2d
4    1378, 1381 (9th Cir. 1984).  This is so even when the claimant is represented by counsel.
5    DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  For these reasons, the ALJ's decision is
6    inadequate.
7        The ALJ's other stated reasons are equally insufficient.
8        First, the treating records of Dr. Trimble and Dr. Bradley both determined plaintiff
9    suffered from Bipolar Disorder I.  The ALJ makes no mention of this in his assessment, and
10   instead notes that plaintiff had "normal psychiatric examinations."  According to Dr. Trimble the
11   plaintiff was moderately impaired in her ability to complete a normal workday or work week
12   without interruptions resulting from psychiatric conditions, and to deal with the usual stresses
13   encountered in competitive work (AR 500), and that the SA opined she should be restricted to
14   "limited peer interaction."  AR 112.
15       Second, the ALJ relies on plaintiff's testimony that she gets along well with her neighbors
16   and her auditory hallucinations were rare when on medication.  AR 23.  "Bipolar disorder is a
17   severe psychiatric illness marked by episodes of mania and depression, impairment of
18   functioning-both cognitive and behavioral, and is frequently complicated by psychotic symptoms
19   (e.g. delusions, hallucinations, and disorganized thinking)."  Buck v. Colvin, 540 Fed. Appx. 772,
20   773 (9th Cir. 2013) (quoting Agyeman v. I.N.S., 296 F.3d 871, 881 (9th Cir. 2002)).  The ALJ's
21   selective citation to improvements in plaintiff's functioning ignores the episodic nature of bipolar
22   disorder.  See Buck v. Colvin, 540 Fed. Appx. 772, 773.  "The very nature of bipolar disorder is
23   that people with the disease experience fluctuations in their symptoms, so any single notation that
24   a patient is feeling better or has a 'good day' does not imply that the condition has been treated."
25   Rand v. Colvin, 2016 U.S. Dist. LEXIS 136530 (2016 Ariz.) (citing Scott v. Astrue, 647 F.3d
26   734, 740 (7th Cir. 2011)).
27       For the reasons stated, the ALJ erred in his consideration of the substantial evidence of
28   plaintiff's mental impairments.

VII.  REMAND

The errors identified above are not harmless.  Further development of the record is necessary to a determination of disability, however.  For example, the undersigned notes that the record before the ALJ did not include documents referencing Imperial County Mental Health.  See AR 648, 314-315, 331-332.  On remand, the ALJ should take care to exercise her "special duty" to fully develop the record by, inter alia, requesting further information and documentation from Imperial County Mental Health.  See Smolden v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

This court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'"  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000)).

A.  Outstanding issues

Under the second step in the remand analysis, the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'"  Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101).  This standard is not satisfied here.

This is not a case where the ALJ expressly rejected the examining physician's opinion, and gave reasons for doing so that were legally insufficient.  Here, the ALJ did not even *acknowledge* Dr. Accinelli as plaintiff's treating physician, and accordingly did not attempt to

18

specify "clear and convincing" or "specific and legitimate" reasons for rejecting her opinion. It is up to the ALJ in the first instance to consider this opinion and if rejecting it – in whole or in part – to explain why it is being rejected. This is especially important where, as here, the plaintiff would be found to be disabled if the opinion is credited as true. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").

B. Discretion

Even if the standards set out in Benecke and Harman had been satisfied, this court would still need to exercise its discretion in determining whether to remand for further proceedings, or for the immediate calculation and award of benefits. Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if discredited evidence were credited as true, "the district court may exercise its discretion to remand the case for an award of benefits"). If the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," the court should remand for further proceedings. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting Garrison, 759 F.3d at 1021). However, the court would be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled." Id.

Here, the record is not clear that plaintiff is disabled within the meaning of the Act. Although there is a treating doctor's opinion that, if credited as true, would leave no doubt that plaintiff is disabled, the court does not know why the ALJ rejected it. Moreover, without the full development of the record, this court cannot be confident that the plaintiff is clearly disabled. Accordingly, this matter will be remanded for the ALJ to make that determination.

VIII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 25) is DENIED;

////

3. This matter is REMANDED to the Commissioner for further proceedings consistent with this opinion; and

4. The Clerk of the Court shall enter judgment for plaintiff and close this case.

DATED: March 31, 2017

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE